## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BENJAMIN BLAUVELT, *individually, and on behalf of minor child*, S.B.,
     *Plaintiff*,

v.

CHRISTOPHER BETHUNE,
     *Defendant.*

No. 3:24-cv-1217 (VAB)

### ORDER ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Benjamin Blauvelt has filed a *pro se* Complaint on behalf of himself and his minor son, S.B. (collectively, "Plaintiffs"), alleging a claim of unlawful seizure of S.B. in violation of the Fourth Amendment under 18 U.S.C. §1983 against Christopher Bethune ("Defendant"), in his individual and official capacity. Compl. ECF No. 1 (July 18, 2024) ("Compl.").

Mr. Blauvelt has also filed a motion for leave to proceed in forma pauperis. Mot. for Leave to Proceed *in forma pauperis*, ECF No. 2 (July 18, 2024) ("Mot.").

For the following reasons, the motion to proceed in forma pauperis is **GRANTED.**

The Section 1983 claim for unlawful seizure on behalf of Mr. Blauvelt is **DISMISSED.**

All Section 1983 claims against Mr. Bethune in his official capacity are **DISMISSED.**

Mr. Blauvelt may proceed on the Section 1983 claim for unlawful seizure on behalf of his minor son S.B., and a Section 1983 claim for denial of a fair trial due to fabrication of evidence on behalf of himself.

## I.    BACKGROUND

### A.  Factual Allegations

On July 12, 2023, Mr. Bethune, a supervisor for the Connecticut Department of Children and Families ("DCF"), entered a home where S.B. resided at that time. Compl. ¶ 7. Mr. Bethune

1

allegedly reported, in a sworn affidavit, that at this visit he witnessed Mr. Blauvelt endanger S.B. *Id.* The affidavit was allegedly used by DCF to gain an order of temporary custody of S.B. *Id.*

On July 13, 2023, S.B. was allegedly put in foster care under the order of temporary custody. *Id.* S.B. allegedly remained in foster care for eight months until March 1, 2024. *Id.* ¶ 8.

In September of 2023, the Connecticut Superior Court allegedly held a trial on the order of temporary custody. *Id.* ¶ 9. The trial concluded on November 30, 2023. *Id.*

The presiding judge allegedly issued a ruling stating that Mr. Bethune's claims and testimony were "totally unreliable and without any credibility," in light of the full case record that established that Mr. Blauvelt was in Florida on July 12, 2023, the day of the alleged endangerment. *Id.*

Mr. Blauvelt alleges that Mr. Bethune "maliciously fabricated a complete lie that he personally witnessed Plaintiff's S.B.'s father endangering Plaintiff S.B. on July 12, 2023, to [a]ffect the unreasonable seizure of Plaintiff S.B." *Id.* ¶ 15.

### B. Procedural History

On July 18, 2024, Mr. Blauvelt filed a *pro se* Complaint. Compl.

On the same day, he filed a motion for leave to proceed *in forma pauperis*. Mot.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915, plaintiffs may seek permission to initiate a lawsuit *in forma pauperis*, or without paying the filing fee. 28 U.S.C. § 1915. When a plaintiff seeks to proceed *in forma pauperis*, courts generally conduct two inquires: first determining whether the plaintiff may be granted *in forma pauperis* status by assessing their financial affidavit; then assessing whether the claims have merit or must be dismissed for frivolity or failure to state a claim. *See Potnick v. Eatern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*) ("The statutory

scheme recognizes, however, that whether a plaintiff qualifies for *in forma pauperis* status and whether his claims have merit present two distinct issues. If the plaintiff demonstrates poverty, he should be permitted to file his complaint *in forma pauperis*. Then the court may properly consider dismissing the complaint as frivolous." (citations omitted)); *see also* 28 U.S.C. § 1915(a)(1) ("Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets . . . ."); 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . [the Complaint] is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . .").

As to the first inquiry, "an affidavit is sufficient" to justify *in forma pauperis* status when it makes clear "that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (cleaned up). While the applicant does not need to "demonstrate absolute destitution," *Potnick*, 701 F.2d at 244, they do need to show that paying the fee would "constitute a serious hardship." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007).

For the second inquiry, a court must dismiss any actions that are "frivolous" or "fail[] to state a claim on which relief may be granted." 28 U.S.C. §§ 1951(e)(2)(b)(i)–(ii). The term frivolous applies not only to the legal conclusions, "but also fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Separately, a Complaint pleads a viable claim for relief when "the plaintiff pleads factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must consider whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For *pro se* plaintiffs the Court liberally construes filings and reads "such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017). Because *pro se* litigants "cannot be expected to know all of the legal theories on which they might ultimately recover," a reviewing "court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal claims set out in his pleadings." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). Thus, the Court must consider whether the factual "allegations can conceivably give rise to a viable claim." *Id.*

### III.    DISCUSSION

#### A.  Financial Need

In his application, Mr. Blauvelt states that he is self-employed and receives a gross monthly income of $650 from his power washing business. Mot. at 2. He has no spouse and receives no income from disability or public assistance. *Id.* Mr. Blauvelt reported $200 in cash and $230 in a business checking account. *Id.*

His monthly expenses include $150 for utilities, $400 for food, and $100 for clothing, altogether totaling $650 for personal expenses. *Id.* at 4. He also has $200 a month for business expenses. *Id.* at 5. His three-year-old son, who he has sole custody of, relies on him for financial support. *Id.* at 3.

Since Mr. Blauvelt's personal monthly expenses are equal to his monthly income, and he has limiting savings and additional business expenses, the Court finds that he would be unable to pay the $405 filing fee and still provide himself and his son with "the necessities of life." *Adkins*,

335 U.S. at 339; *see, e.g.*, *Rosa v. Doe*, 86 F.4[th] 1001, 1010 (2d Cir. 2023) (determining that *pro se* plaintiff could proceed *in forma pauperis* when paying the $402 filing fee would leave him with less than $200 in his inmate account).

Accordingly, Mr. Blauvelt will be granted *in forma pauperis* status.

### B. Sufficiency of the Allegations

Mr. Blauvelt alleges one claim of unlawful seizure in violation of the Fourth Amendment under Section 1983 on behalf of himself against Mr. Bethune, and one claim of unlawful seizure in violation of the Fourth Amendment under Section 1983 on behalf of his minor son against Mr. Bethune. Compl. ¶¶ 12–15. Mr. Blauvelt alleges these claims against Mr. Bethune in his individual and official capacity. *Id.* at 3. The Court also determines whether Mr. Blauvelt's factual allegations may support a Section 1983 claim for denial of fair trial due to fabrication of evidence.

The Court considers each claim in turn.

### 1. The Unlawful Seizure Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." (internal quotation marks and citation omitted)). The touchstone of the Fourth Amendment is reasonableness. *See United States v. Knights*, 534 U.S. 112, 118 (2001); *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61–2 (1992) ("Whether the Amendment was in fact violated is ... [a] question that requires determining if the seizure was reasonable.").

Generally, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when the government actors have 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" (quoting *Terry,* 392 U.S. at 19 n.16)).

A seizure is considered "reasonable" when it is justified by probable cause. *Grice v. McVeigh*, 873 F.3d 162, 166–67 (2d Cir. 2017). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino v. City of New Haven* 950 F.2d 864, 870 (2d Cir. 1991). A plaintiff can only defeat this presumption "by showing that a defendant (1) 'knowingly and deliberately, or with a reckless disregard of the truth,' procured the warrant, (2) based on 'false statements or material omissions,' that (3) 'were necessary to the finding of probable cause.'" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994).

In the child welfare context, seizure occurs when a child is taken by a state official during an investigation of neglect or abuse. *See Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999) (finding that child "taken by government official . . . during an abuse investigation" consisted of a seizure); *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000) (concluding that child was "seized" under the Fourth Amendment when child was held at hospital during a child abuse investigation). In this context, "a court order [allowing for state custody of the child] is the

equivalent of a warrant" for arrest in seizures for criminal prosecutions. *See Tenenbaum*, 193 F.3d at 602.

At the outset, Mr. Blauvelt's claim of Fourth Amendment violation on behalf of himself must be dismissed because he does not allege that he himself was the subject of any search or seizure. *See P.C. v. Connecticut Dept. of Children and Families*, 662 F. Supp. 2d 218, 232 (D.Conn. 2009) ("The seizure of the C. children does not, however, implicate the Fourth Amendment rights of [their parents,] P.C. and S.R.C. That is, to the extent [the parents] bring a claim to redress their own Fourth Amendment rights, as opposed to the Fourth Amendment rights of their children, such claim fails as a matter of law." (citations omitted)). The Court thus proceeds with its analysis of the Fourth Amendment claim only insofar as Mr. Blauvelt alleges the claim on behalf of S.B.

Here, there was an order of temporary custody issued by a judge in state court, analogous to a warrant in the criminal context. Therefore, Mr. Blauvelt, on behalf of S.B., must allege sufficient facts to defeat the presumption that the seizure was reasonable

First, the Court considers whether Mr. Blauvelt has sufficiently alleged that Mr. Bethune "(1) 'knowingly and deliberately, or with a reckless disregard of the truth,' procured the [order], (2) based on 'false statements or material omissions.'" *Ganek*, 874 F.3d at 81 (quoting *Velardi*, 40 F.3d at 573).

Mr. Blauvelt alleges that Mr. Bethune stated in the affidavit that he "personally witnessed" Mr. Blauvelt endangering S.B. at a residence in West Hartford, Connecticut, where S.B. lived at the time. Compl. ¶ 7. The same day that Mr. Bethune visited the residence, however, Mr. Blauvelt was allegedly in Florida. *Id.* ¶ 9. Mr. Blauvelt then alleges that Mr.

Bethune directed his subordinate to present the affidavit to a state court judge, and that the affidavit "was used to gain" the order of temporary custody. Id. ¶ 7.

At the pleading stage, the "physical impossibility" of the act witnessed by the state actor can lead to an inference that the state actor had knowing, deliberate, or reckless disregard for the truth. *See Calderon v. City of New York*, 138 F. Supp. 3d 593, 605 (S.D.N.Y. 2015) (stating that plaintiff would fulfil the first part of *Ganek* analysis on the theory that "[the officer] must have knowingly or recklessly made false statements in the affidavit because it was impossible for Perez to have been seen entering or exiting apartment 5F"). In this case, Mr. Blauvelt has adequately pled that it was "physically impossible" for him to be endangering S.B. at the house in West Hartford, Connecticut, since he was allegedly in Florida at the time. This is sufficient to plead knowing or reckless disregard for the truth. *See, e.g.*, *Calderon*, 138 F. Supp. 3d at 606 ("Calderon has therefore adequately pled that it was physically impossible for Perez to have entered or exited apartment 5F in August 2013, and thus that South's statements to that effect were knowingly or recklessly false.").

Second, the Court assess whether the allegedly false statements "were necessary to the finding of probable cause." *Ganek*, 874 F.3d at 81 (quoting *Velardi*, 40 F.3d at 573). A false statement is not necessary if "after eliminating it, the corrected affidavit would still have supported a finding of probable cause." *Calderon*, 138 F. Supp. 3d at 607 (*Velardi v. Welsh*, 40 F.3d 569, 573–74 (2d Cir. 1994)).

To obtain an order for temporary custody, Connecticut law requires a showing that "there is reasonable cause[1] to believe (1) the child or youth is suffering from serious physical illness or

---

[1] The Connecticut Supreme Court has considered the "reasonable cause" standard in Section 46b-129(b) to be equivalent to probable cause. *See, e.g.*, *Teresa T. v. Regaglia*, 865 A.2d 428, 437 (Conn. 2005) ("The remedies provided in §§ 46b–129(b) and 17a–101g(c) are available only upon a finding that there is probable cause to believe that the child is in unsafe surroundings and that immediate removal is necessary to protect the child from harm.").

serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety." Conn. Gen. Stat. § 46b-129(b). Given this standard, and taking Mr. Blauvelt's allegations as true, Mr. Bethune's report that S.B. was being endangered by his father was likely necessary to the conclusion that there was probable cause for the removal of S.B.

Thus, Mr. Blauvelt, on behalf of S.B., has sufficiently alleged that the seizure of S.B. was "unreasonable" despite the court order. *Cf. Calderon*, 138 F. Supp. 3d at 609 (finding that plaintiff "adequately pled that the search of her apartment was unlawful" despite warrant when "a corrected affidavit . . . would not have supported probably cause to search that apartment").

Accordingly, Mr. Blauvelt on behalf of S.B. can proceed on a Section 1983 claim for unlawful seizure in violation of the Fourth Amendment.

### 2. The Due Process Claim

Under the Due Process Clause of the Fourteenth Amendment, parents have procedural and substantive due process rights involving the care and custody of their children. "As a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2012) (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003)). And, "[p]arents have a 'substantive right under the Due Process Clause to remain together [with their children] without the coercive interference of the awesome power of the state.'" *Id.* at 142 ((quoting *Tenenbaum*, 193 F.3d at 600)).

Under the Fourteenth Amendment, all citizens also have a "right to a fair trial" which can be denied when a state official creates fake evidence that is then sent to prosecutors. *Frost v. New York City Police Department*, 980 F.3d 231, 244 (2d Cir. 2020). While the phrasing in the doctrine contemplates a criminal trial the Second Circuit has stated that the right is "imprecisely named" and the focus should be on evidence that "would be likely to influence a jury's decision, *were that evidence presented the jury*." *Frost*, 980 F.3d at 250 (emphasis in original).

In recognition of this "imprecise" naming of the right and the due process rights owed to parents in child welfare proceedings, district courts in this Circuit have applied this standard to child welfare proceedings. *See, e.g.*, *Zubko-Valva v. County of Suffolk*, 607 F. Supp. 3d 301, 314–15 (E.D.N.Y. 2022).

While the Complaint does not explicitly allege a fabrication of evidence claim, Mr. Blauvelt does directly allege that Mr. Bethune "maliciously fabricated" the affidavit underlying the order of temporary custody. Compl. ¶ 15. Thus, construing the Complaint liberally, the Court finds that it raises a Section 1983 claim that Mr. Blauvelt's rights to a fair proceeding under the Fourteenth Amendment were violated because of the allegedly fabricated evidence.

To bring a claim of denial of a fair trial on the basis of fabricated evidence, plaintiff must show that an "(1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

Mr. Blauvelt alleges that Mr. Bethune, during an investigative visit, fabricated a report that Mr. Blauvelt had endangered S.B. Compl. ¶ 7. This report was then allegedly presented in an *ex parte* hearing in state court and used as the basis for an order of temporary custody, leading

S.B. to be placed in foster care for several months. *Id.* ¶¶ 7–8. These allegations suffice to state a claim that Mr. Blauvelt was denied access to a fair proceeding due to the alleged fabrication of evidence. *See, e.g.*, *Zubko-Valva*, 607 F. Supp. 3d at 315 (concluding that allegations that a child protective services investigator "fabricated evidence that [plaintiff] was neglecting and abusing her children" which was used to secure a "temporary protection order restricting [plaintiff's] ability to interact with her children . . . thus constituted a deprivation of liberty sufficient to allege a denial of the right to a fair trial claim").

Accordingly, Mr. Blauvelt can proceed on a Section 1983 fabrication of evidence claim under the Fourteenth Amendment was violated through the.

### 3.  The Official Capacity Claims

Under the Eleventh Amendment, "a federal court c[an] not entertain a suit brought by a citizen against his own state." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "This jurisdictional bar also immunizes a state entity that is an arm of the state, including, in appropriate circumstances, a state official acting in his or her official capacity." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Mr. Blauvelt brings his Section 1983 claims against Mr. Bethune in his individual and official capacity.

Any Section 1983 claim for damages against a state actor acting in his or her official capacity is barred by sovereign immunity. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("In addition to preventing suits against a state, sovereign immunity also extends to bar claims for monetary damages brough against state officers sued under section 1983 in their official capacities.").

Accordingly, any claim for relief under Section 1983 against Mr. Bethune in his official capacity will be dismissed.

**IV.    Leave to Amend**

Generally, if a claim by a *pro se* plaintiff is dismissed upon initial review, the court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Where there is no indication that a valid claim can be stated after a liberal reading of a *pro se* plaintiff's complaint, however, the court need not grant leave to amend. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."). Leave to amend can be "futile" where the problems with a plaintiff's "causes of actions [are] substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Futility may exist where claims are barred by immunity doctrines or statutes of limitations. *See Harrison v. New York*, 95 F.Supp.3d 293, 305 (E.D.N.Y. 2015) (collecting cases).

Here, the Court will dismiss Mr. Blauvelt's Section 1983 claim for unlawful seizure on behalf of himself and any Section 1983 claim against Mr. Bethune in his official capacity. As to the Fourth Amendment claim on behalf of Mr. Blauvelt himself, Mr. Blauvelt attempts to assert rights that belong to S.B., not himself. As to the official capacity claims, such claims are barred by sovereign immunity. These claims thus cannot be revived by additional pleading and amendment to them is futile. *See Kirschenbaum v. Federal Ins. Co.*, 505 B.R. 126, 131 (E.D.N.Y. 2014) ("An amendment is considered futile if, for example, it could not defeat a

12

motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction." (citations omitted)).

Accordingly, the Court will deny leave to amend at this time. If Mr. Blauvelt wishes to amend his Complaint in the future, he may submit a motion for leave to amend, the Court will consider any proposed amendments at that time.

## V.    CONCLUSION

For the reasons explained above, the motion to proceed in forma pauperis is **GRANTED.**

The Section 1983 claim for unlawful seizure on behalf of Mr. Blauvelt is **DISMISSED.**

All Section 1983 claims against Mr. Bethune in his official capacity are **DISMISSED.**

Mr. Blauvelt may proceed on the Section 1983 claim for unlawful seizure on behalf of his minor son S.B., and a Section 198 claim for denial of a fair trial due to fabrication of evidence on behalf of himself.

**SO ORDERED** at New Haven, Connecticut, this 9th day of May, 2025.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge